UNITED STATES of America, Plaintiff,

v.

Andrew B. CARSELLO, Defendant.

No. 76 CR 824.

United States District Court,
N. D. Illinois, E.D.

Jan. 24, 1977.

### SCHEDULE

Award to Lipper Lowey & Dannenberg

Samuel K. Skinner, U.S. Atty., Chicago, Ill., for plaintiff.

Julius L. Echeles, Chicago, Ill., for defendant.

## DECISION ON DEFENDANT'S MOTION TO SUPPRESS

McMILLEN, District Judge.

The Court has heard the evidence on the defendant's motion to suppress certain documents which were seized from him pursuant to a State court search warrant. We have found and concluded that the warrant was in proper form and was issued on the basis of reasonable cause. Therefore, the officer had a right to be in defendant's apartment. However, we also find and conclude that the documents seized pursuant to the warrant were not the type described in it and were not evidence in plain view which gave rise to a reasonable belief that a statute of the State of Illinois had been violated. Therefore, defendant's motion to suppress is granted.

The warrant was directed to a police officer of the City of Chicago and authorized him to seize

Records of wagers on horse races, scratch sheets, U.S. currency and any

paraphernalia used, kept, or provided for the illegal act of gambling and the telephone numbered [sic] 848–6685 which had been used in the commission of or which constitute evidence of the offense of gambling.

The documents are in evidence on this motion as Government's Ex. 9. They were originally suppressed by a State court in Illinois and were then subpoenaed by the Federal government. The government contends that the documents were evidence of violation of the Illinois Criminal Usury Statute which makes it a crime for an individual to lend money at a rate greater than 20 percent per annum. Defendant has been indicted for income tax violations which these documents allegedly support.

The Illinois usury statute (Ch. 38, § 39–1) provides:

(a) Any person commits criminal usury when, in exchange for either a loan of money or other property or forbearance from the collection of such a loan, he knowingly contracts for or receives from an individual, directly or indirectly, interest, discount or other consideration at a rate greater than 20% per annum either before or after the maturity of the loan.

(b) When a person has in his personal or constructive possession records, memorands, or other documentary record of usurious loans it shall be prima facie evidence that he has violated Subsection 39–1(a) hereof.

■■■ We believe that the officer who seized the documents has the burden to show the basis for his reasonable belief concerning their facially incriminating nature, since they were not seized pursuant to the warrant. See *United States v. Ressler*, 536 F.2d 208, 213 (7th Cir. 1976). Neither he nor the Federal prosecutor in his memorandum have explained how these documents might be evidence of a violation of the Illinois usury statute, as distinguished from evidence of non-usurious loans. They appear on their face to be records of debts and payments made by certain individuals but contain no indication of interest rates.

Neither the government nor its witness contend they aare evidence of illegal gambling.

The officer had no information at hand other than appears from the face of the documents and from the search warrant, except that the defendant also had a directory of alleged "juice loan racketters" published by the Illinois Bureau of Investigation which did not contain his name. The officer found no gambling paraphernalia or records in defendant's possession. The defendant made no statement or furnished any other reason to believe that he was making usurious loans.

The officer was not experienced in investigating usurious loans. He merely seized the papers on the basis of a suspicion which he wished to fortify by further analysis and inspection by experts. In our opinion, this does not justify seizure of the records, although it might have justified an *ex parte* consultation with an expert upon which a second search warrant might have been obtained.

The leading case on this subject of course is *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In that decision, Justice Stewart said that in order for incriminating evidence to be seized under the "plain view" doctrine, it must be "immediately apparent to the police that they have [incriminating] evidence before them". 403 U.S. at 466, 91 S.Ct. at 2038. Most of the cases upholding a "plain view" search involve guns, as does *United States v. Ressler*, *supra*, p. 770. Therein, the Seventh Circuit required that the officers have "probable cause" to believe that the rifly constituted incriminating evidence, which belief in that case coincided with the grounds for issuance of the warrant. See also *United States v. Gray*, 484 F.2d 352 (6th Cir. 1973).

We find that the officer who seized the defendant's records in the case at bar has not supported his seizure by affording any facts or grounds which gave rise to a probable cause to believe that the State usury statute had been violated by the defendant. Even as of the date of our hearing, neither the officer nor the government offered any explanation as to why these documents were evidence of usurious loans, except that among them was the list of alleged juice racketeers published by the Illinois Bureau of Investigation. This juxtaposition of documents in our opinion is insufficient to render incriminating that which on its face does not appear to be incriminating. Therefore, the defendant's motion to suppress is granted.

Assuming that we are mistaken in the foregoing and that the records were properly seized, we find and conclude that they came into the possession of the Federal government properly and without prosecutorial misconduct. The records were subpoenaed by the Federal government and were turned over pursuant to a proper subpoena by the person who had custody of them in the Chicago Police Department. What may have happened before the Federal gevenment subpoena was complied with does not taint the evidence insofar as use in a Federal court is concerned, since the Federal government was not shown by the evidence to have taken any improper action to prevent defendant's retrieval of the records before the subpoena was served. We would deny the motion to suppress on this ground, were we to reach it.